IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

TERRI GREENWOOD                                                                    PLAINTIFF

v.                              NO. 3:16-cv-00211 PSH

NANCY A. BERRYHILL, Acting Commissioner                                DEFENDANT
of the Social Security Administration


MEMORANDUM OPINION AND ORDER

Plaintiff Terri Greenwood ("Greenwood") began this case by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Greenwood maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole.[1] It is Greenwood's position that her residual functional capacity was not properly assessed. She so maintains for two reasons, one of which has merit. Greenwood maintains that the "meager mental limitations" found by the ALJ are not supported by the record. See Document 12 at CM/ECF 16. For the reasons that follow, the Court agrees.

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010).

Greenwood alleges that she became disabled beginning on January 19, 2010. She filed her application seeking supplemental security income payments on February 20, 2014, and the ALJ denied the application on June 25, 2015. The Commissioner correctly maintains that supplemental security income payments are not payable for any period prior to the filing date of the application seeking such payments. The Commissioner therefore maintains, and the Court agrees, that the relevant time period in this case is from the filing date of the application, i.e., February 20, 2014, through the date of the ALJ's decision, i.e., June 25, 2015. Although evidence prior to February 20, 2014, is outside the relevant period, the evidence will nevertheless be reviewed in order to place Greenwood's mental limitations in the proper context.

The evidence relevant to Greenwood's mental impairments reflects that she began seeing Dr. Larry Felts, M.D. ("Felts") at least as early as January 19, 2009, for complaints that included depression, anxiety, panic attacks, and problematic relationships. See Transcript at 412. At that time, she was taking prescription medication for depression, anxiety, and psychosis, and the medication was helping to relieve her symptoms.

Greenwood thereafter saw Felts on what appears to have been twenty occasions

through November 19, 2013. See Transcript at 411 (04/07/2009), 410 (07/06/2009), 409 (10/05/2009), 408 (01/04/2010), 407 (03/29/2010), 406 (06/17/2010), 405 (09/09/2010), 404 (12/02/2010), 403 (02/28/2011), 402 (05/26/2011), 399 (09/21/2011), 398 (12/15/2011), 397 (03/14/2012), 396 (07/10/2012), 395 (09/07/2012), 394 (12/05/2012), 393 (02/28/2013), 392 (05/24/2013), 391 (08/22/2013), 390 (11/19/2013). The progress notes reflect that although Greenwood continued to complain of depression, anxiety, panic attacks, and problematic relationships, the severity of her mental problems fluctuated. Felts repeatedly diagnosed a bipolar disorder and an anxiety disorder and continued Greenwood on medication for her mental problems.

On February 11, 2014, Felts signed a "To Whom It May Concern" letter in which he addressed Greenwood's limitations caused by her mental impairments. In the letter, he represented the following:

> … I have been treating [Greenwood] for Bipolar Disorder Mixed with Psychotic Features and Anxiety Disorder NOS. She has trouble maintaining the stability of her mood. Manic irritability, pressured speech, and conflicts with peers lead to her losing her job as a cafeteria worker in the past. She gets paranoid at times, as well as anxious, obsessively worried, and impulsive. Concentration and memory are poor. Panic attacks are less frequent with the help of medication, but still cause episodes of hyperventilating, shortness of breath, tachycardia, tremors, etc. Overall, her condition limits her ability to function at any job. Her condition is chronic and prognosis is poor.

See Transcript at 388.

Greenwood thereafter saw Felts on what appears to have been five occasions

between February 17, 2014, and December 9, 2014. See Transcript at 389 (02/17/2014), 387 (03/17/2014), 385 (06/12/2014), 384 (09/10/2014), 383 (12/09/2014). The progress notes reflect that her mental symptoms stabilized and even improved despite family difficulties.[2] For instance, the June 12, 2014, progress notes reflects that Greenwood was living by herself and managing her activities of daily living. She reported that Xanax was helping her panic attacks. See Transcript at 385. The September 10, 2014, progress note reflects that she was doing better. See Transcript at 384.

On June 3, 2014, Greenwood was seen by Dr. Samuel Hester, Ph.D. ("Hester") for a mental diagnostic evaluation. See Transcript at 321-329. He recorded her medical history and noted, inter alia, her complaints of, inter alia, anxiety and insomnia. She reported having been sexually and physically abused as a child. She additionally reported that her father was a "physically abusive alcoholic," and there was "a lot of drama always in the family." See Transcript at 321. She was taking Abilify, Trazodone, Xanax, Gabapentin, and Mobic, and she reported that the medication "[kept] her symptoms relatively well controlled." See Transcript at 321. With specific regard to her anxiety, she reported that the medication "likely causes more sedation and lethargy rather than allowing anxiety to occur." See Transcript at 321-322. Hester observed that Greenwood was appropriately dressed and groomed, her attitude was good and cooperative, her

---

[2] The December 9, 2014, progress note reflects that Greenwood was having transportation issues, her sixteen-year-old daughter was pregnant, and Greenwood's son was incarcerated. See Transcript 383. During the period, Greenwood was also alleged to have offered to trade Xanax for "pain pills." See Transcript at 386. She denied the allegation, though. See Transcript at 45-46.

mood did not appear to be depressed or anxious, and her affect was "appropriate to mood" but "seemed a little dulled by all the medications." See Transcript at 323. He additionally observed that her speech did not show any abnormalities; her thought process was logical; and her thought content did not display any "overvalued ideas, no bizarre obsession, [or] preoccupations." See Transcript at 324. He observed that she was alert and fully oriented in all spheres. His diagnoses included the following impairments: post-traumatic stress disorder, a depressive disorder, and a pain disorder. With respect to the effects of her mental impairments on her adaptive functioning, he found the following:

> 1. How do mental impairments interfere with this person's day to day adaptive functioning? ... [Greenwood] was able to drive unfamiliar routes. [She] was reportedly able to perform most [activities of daily living] autonomously. She does her own shopping and bill paying. She does not participate in social groups.
>
> 2. Capacity to communicate and interact in a socially adequate manner? ... [She] has the capacity to communicate and interact in a socially adequate manner.
>
> 3. Capacity to communicate in an intelligible and effective manner? [She] has the capacity to communicate in an intelligible and effective manner.
>
> 4. Capacity to cope with the typical mental/cognitive demands of basic work-like tasks? [Greenwood] can cope with the mental demands of basic work tasks.
>
> 5. Ability to attend and sustain concentration on basic tasks? [She] has the ability to attend and sustain concentration on basic tasks.
>
> 6. Capacity to sustain persistence in completing tasks? [She] has the ability to sustain persistence in completing tasks.

> 7. Capacity to complete work-like tasks within an acceptable time frame? [Greenwood] can complete work tasks within an acceptable timeframe unless pain issues and all the sedating side effects of current medication regimen slow her too much.

See Transcript at 326-327.

Greenwood saw Felts again on February 20, 2015. See Transcript 434-438. He recorded her complaints and medical history to include the following:

> … Greenwood is a 52-year-old white female who is living alone and in the process of getting a divorce she's had chronic difficulties with anxiety and depression mania and paranoid currently her chief complaint is sleep loss she says that she is averaging 4 or 5 hours of sleep per night …
>
> … Greenwood has had chronic problems with back pain she is overweight and is trying to lose weight instead of having back surgery and she is watching her diet and walking regularly she plans to have a gastric sleeve placed to assist in losing weight.
>
> In the past … Greenwood has had radical mood swings at times she would be manic with racing thoughts and flight of ideas lots of impulsive behaviors and at other times she will be down and depressed and socially withdrawn and fatigued lack of motivation however she is not been suicidal there are times when she has been paranoid feeling that people are watching here and talking about her etc. she has panic attacks that have been quite severe at times currently alprazolam 2 mg 3 times a day has been reducing the severity and duration of the panic attacks Abilify 5 mg daily at bedtime is helping with depression and mania and paranoia trazodone has helped with the depression 150 mg at bedtime seems to be … working well however since she is still having trouble sleeping I will add Ambien 10 mg daily at bedtime she is given a month's prescription with 2 refills she will continue individual psychotherapy and return for med management in 3 months.

See Transcript at 434. Felts observed that Greenwood's grooming was good, her affect

was appropriate, her mood was euthymic, and her thought process was logical. He also observed that her orientation was good for person/place/time, her memory and concentration were good, and her judgment appeared to be normal. He noted that her activities and/or hobbies included "ministering to others [and] watching TV." See Transcript at 435. His diagnoses remained unchanged, i.e., he continued to diagnose a bipolar disorder and an anxiety disorder, and he continued to treat her with medication.

On April 27, 2015, Felts signed a medical source statement-mental in which he addressed Greenwood's mental limitations. See Transcript at 427-428. He opined that she has extreme limitations in the following two respects: 1) the ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; and 2) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. He also opined that she has numerous marked limitations, limitations that include the following: 1) the ability to remember locations and work-like procedures, 2) the ability to carry out very short instructions, 3) the ability to maintain attention and concentration for extended periods, 4) the ability to accept instructions and respond appropriately to criticism from supervisors, and 5) the ability to respond appropriately to changes in the work setting. Felts opined that Greenwood's mental impairments would cause her to be absent from work more than three days a month.

Greenwood saw Felts again on May 11, 2015. <u>See</u> Transcript 430-433.[3] He noted that she had been psychotic in the past but medication was helping control her symptoms. He also noted that while her mood swings had grown less severe, "she still has panic attacks and these get worse if she gets around crowds of people ..." <u>See</u> Transcript at 430. He observed that her grooming was good, her thought process was logical, and her memory and concentration were fair. He observed, though, that her affect was blunted, and her mood was anxious. His diagnoses and medication regimen remained unchanged.

Greenwood's medical records were reviewed by state agency medical consultants. <u>See</u> Transcript at 62-74, 76-91. The consultants opined that Greenwood's mental impairments were such that she has mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and had no episodes of decompensation, each of an extended duration.

Greenwood completed a series of documents in connection with her claim for supplemental security income payments. <u>See</u> Transcript at 168-176, 177-184, 185-186, 187-188. In the documents, she represented, <u>inter</u> <u>alia</u>, that she has difficulty remembering, concentrating, understanding, completing tasks, and following instructions.

---

[3] The progress note refers to a "Caitlin Wood." <u>See</u> Transcript at 430. The Court assumes that the reference is a typographical error.

The record contains a summary of Greenwood's reportable earnings. See Transcript at 160-164. The summary reflects that her earnings were minimal between 1978 and 2011, save the years between 1990 and 1992.

Greenwood testified during the administrative hearing. See Transcript at 38-55. She was born on March 10, 1962, and was fifty-three years old at the time of the hearing. She has been married five times but now lives by herself. She has a driver's license but she does not have an automobile. With respect to Greenwood's mental state, she testified that she sees a therapist from Felts' office once a week. When Greenwood was asked how she is doing mentally, she answered as follows: "Well, you know, he-I just take my medicine like I'm supposed to. And, like I said, I live by myself. I guess I'm doing okay there. You know, I do what he [i.e., Felts] tells me to do." See Transcript at 44. When asked how she spends her days, she testified as follows: "Well, I get up, take a shower, get dressed, eat my breakfast. I'm at home by myself all the time. I don't have a vehicle. So I don't have-I can't go walk very far or anything. I had to have someone give me a ride here." See Transcript at 44. Greenwood later added the following:

> … I usually get up, take a shower, and make myself something to eat. And then I read my Bible. Then I-I'm just at home. You know, I don't have cable TV or anything like that. I watch VHS tapes, movies, and read. If I have to vacuum once a week, I vacuum. I don't have a lot of picking up to do because it's just me. You know, that's-I don't have to clean up after a houseful of people. I'm not able to do that anyway. So I just do what I can.

See Transcript at 52-53.

The ALJ found at step two of the sequential evaluation process that Greenwood's severe impairments include a depressive disorder, an anxiety disorder, and a somatoform disorder. The ALJ assessed Greenwood's residual functional capacity and found that she can perform light work but with the following limitation caused by her mental impairments: "[she] is limited to detailed, but not complex tasks involving three or four steps, but with several variables." See Transcript at 19.[4] In so finding, the ALJ gave little weight to Felts' opinions because they were "inconsistent with [Greenwood's] reports, testimony, and regular psychiatric records." See Transcript at 23, 24, 25. The ALJ gave great weight, though, to Hester's opinions because they were "consistent with [Greenwood's] reports and testimony." See Transcript at 24. The ALJ also gave great weight to the opinions of the state agency medical consultants.

Greenwood maintains that the meager mental limitations found by the ALJ are not supported by the record. Greenwood so maintains primarily for two reasons. She first maintains that the ALJ improperly weighed Felts and Hester's opinions.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." See Bentley v. Shalala, 52 F.3d 784, 785 (8th Cir. 1995) [internal quotation omitted]. A treating physician's medical opinions are given controlling weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence. See Choate v.

---

[4] The ALJ found at step four that Greenwood is unable to perform her past relevant work but found at step five that there is other work she can perform. The ALJ concluded that Greenwood was not disabled.

Barnhart, 457 F.3d 865 (8th Cir. 2006). The ALJ may discount a treating physician's medical opinions and credit a one-time consulting physician's opinions where the former renders inconsistent opinions that undermine the credibility of such opinions or where the latter's opinions are supported by "better or more thorough medical evidence." See Anderson v. Barnhart, 344 F.3d 809, 813 (8th Cir. 2003).

The ALJ's decision to give little weight to Felts' opinions but give great weight to Hester's opinions is not something the Court takes lightly. A treating physician like Felts is usually more familiar with a claimant's medical condition than are other physicians. See Thomas v. Sullivan, 928 F.2d 255 (8th Cir. 1991). The proposition is certainly true in this instance as Felts saw Greenwood on what appears to have been twenty-seven occasions before offering the April 27, 2015, medical source statement, and Hester only saw Greenwood one time. On the record now before the Court, it cannot be said that substantial evidence on the record as a whole supports the weight given Felts and Hester's opinions. The Court so finds for the following reasons.

First, the reasons the ALJ gave for discounting Felts' opinions are not particularly compelling. The ALJ discounted the opinions because they were "inconsistent with [Greenwood's] reports, testimony, and regular psychiatric records." See Transcript at 23, 24, 25. Admittedly, Greenwood's testimony regarding her mental state was not remarkable, e.g., she guessed she was doing "okay." See Transcript at 44. Greenwood's reports and the treatment record complied by Felts, though, are consistent with his opinions that she has significant mental limitations. Time and again, he recorded her

complaints of depression, anxiety, panic attacks, and problematic relationships. He obviously credited her complaints because he prescribed strong medication to treat her symptoms. Her symptoms fluctuated over time, and it is conceivable that her symptoms were less severe at the time she was seen by Hester. As Greenwood correctly notes, "[i]t is inherent in psychotic illnesses that periods of remission will occur," and such periods do not mean the disability has ceased. See Document 12 at CM/ECF 21 [quoting Andler v. Chater, 100 F.3d 1389, 1393 (8th Cir. 1996) [internal quotations omitted].

Second, the record as a whole does not establish that Felts rendered inconsistent opinions about Greenwood's mental impairments and their affect on her ability to function. Although it is true that his progress notes contain some unremarkable findings, his opinions were nevertheless consistent throughout the relevant period. For instance, in his February 11, 2014, "To Whom It May Concern" letter, he opined, inter alia, that she has trouble maintaining the stability of her mood; has conflicts with her peers; "gets paranoid at times, as well as anxious, obsessively worried, and impulsive;" and has "episodes of hyperventilating, shortness of breath, tachycardia, tremors, etc." See Transcript at 388. In his April 27, 2015, medical source statement, he opined that she has extreme limitations in at least two respects and several marked limitations. See Transcript at 427-428. In short, this case is not an instance in which a treating physician has rendered inconsistent opinions. If nothing else, Felts' opinions have been consistent; he has consistently opined that Greenwood has significant mental impairments and they affect her ability to function.

Third, the record as a whole does not establish that Hester's opinions are supported by better or more thorough medical evidence. A fair reading of the report he prepared following his evaluation of Greenwood reflects that he recorded her medical history, observed her mental state, and offered his assessment of the effects of her mental impairments on her adaptive functioning. Although the ALJ can give greater weight to the opinions of a consulting physician than the opinions of a treating physician, see Anderson v. Barnhart, 344 F.3d 809 (8th Cir.2003), the consulting physician's opinions must be well-supported by medically acceptable clinical and laboratory diagnostic techniques. In this instance, Hester did no testing, and there is no indication he reviewed any medical documentation. Hester simply examined Greenwood one time and reached a different conclusion than Felts.

The opinion evidence in this case is varied and paints substantially different pictures of Greenwood's ability to function. Although it is the ALJ's responsibility to resolve conflicts among the various opinions, the Court would benefit from the ALJ re-evaluating the various opinions of Greenwood's mental impairments and their effect on her ability to function in the workplace.

Greenwood additionally challenges the crafting of her residual functional capacity. Greenwood maintains that "[t]he ALJ found ... Greenwood has virtually no mental limitations." See Document 12 at 25. The Court will not devote much attention to her assertion but agrees that the assessment of her mental residual functional capacity is flawed and should be re-assessed upon remand.

The record as a whole establishes that Greenwood has mental impairments, and the ALJ indeed found that Greenwood's severe impairments include a depressive disorder, an anxiety disorder, and a somatoform disorder. The question was not whether she has mental impairments but the extent to which they impact the most she can do despite the impairments. The ALJ found that the impairments cause virtually no work-related limitations as he did not incorporate a meaningful mental limitation into Greenwood's residual functional capacity. He simply found that "[she] is limited to detailed, but not complex tasks involving three or four steps, but with several variables." See Transcript at 19.

Substantial evidence on the record as a whole does not support the assessment of Greenwood's mental residual functional capacity as she appears to have work-related limitations caused by mental impairments. For instance, even the state agency medical consultants opined that Greenwood has moderate difficulties in maintaining concentration, persistence, or pace, and the ALJ represented that he gave great weight to their opinions.

It is for the foregoing reason that substantial evidence on the record as a whole does not support the weight given Felts and Hester's opinions or the assessment made of Greenwood's mental residual functional capacity. A remand is therefore necessary. Upon remand, the ALJ shall re-assessment Greenwood's mental residual functional capacity and, as a part of doing so, re-evaluate the various opinions. If Felts' opinions should be discounted, the ALJ shall offer sound reasons for doing so.

The Commissioner's decision is reversed, and this case is remanded. The remand in this case is a "sentence four" remand as that phrase is defined in 42 U.S.C. 405(g) and <u>Melkonyan v. Sullivan</u>, 501 U.S. 89 (1991). Judgment will be entered for Greenwood.

IT IS SO ORDERED this 3rd day of April, 2017.

_____
UNITED STATES MAGISTRATE JUDGE